**WINKLE et al., Appellants,**

v.

**ZETTLER FUNERAL HOMES, INC. et al., Appellees.**

[Cite as *Winkle v. Zettler Funeral Homes, Inc.*, 182 Ohio App.3d 195, 2009-Ohio-1724.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2008–06–144.

Decided April 13, 2009.

196

Robert L. Raper and Lisa M. Wenzel; and Christopher L. Jackson, for appellants.

Dan L. Ferguson, for appellees Butler County and John Does.

Green & Green Lawyers, L.P.A., and Jane M. Lynch, for appellee Zettler Funeral Homes.

Joseph A. McGee, for appellee Greenwood Cemetery.

POWELL, Judge.

{¶ 1} Plaintiffs-appellants, Brian and Tracy Winkle, appeal the Butler County Court of Common Pleas' decision granting summary judgment in favor of defendants-appellees, Butler County Coroner's Office, various Butler County employees, Zettler Funeral Homes, Inc. ("Zettler"), and Greenwood Cemetery Association ("Greenwood").[1] We affirm the trial court's decision.

{¶ 2} On April 27, 2007, Deborah Reed, appellants' mother, died as a result of a house fire. After her body was discovered, Ms. Reed's remains were transported to the Butler County Coroner's Office. Following an autopsy, Ms. Reed's remains were placed in the morgue cooler by Marvin Spangenberg, a morgue attendant with the coroner's office for the past 22 years. The following day, on April 28, 2007, Paula Webb died as a result of a drug overdose. After an autopsy was performed, Spangenberg also placed Ms. Webb's remains in the coroner's office cooler.

---

1. Pursuant to Loc.R. 6(A), we have sua sponte removed this appeal from the accelerated calendar.

{¶ 3} Appellants, unable to afford the cost of burying their mother, applied to the city of Hamilton for an indigent burial. Their application was approved. Hamilton then contracted with Zettler Funeral Homes, Inc. to provide a casket and to transport Ms. Reed's remains from the morgue to Greenwood Cemetery. Greenwood Cemetery Association, as part of its own contract with the city of Hamilton, was to provide a vault, grave, and marker for Ms. Reed.

{¶ 4} A few days later, on May 1, 2007, and pursuant to its contract with the city of Hamilton, a Zettler employee went to the morgue to retrieve Ms. Reed's remains for transport to Greenwood Cemetery. However, without checking the identification of the body, Spangenberg, the same employee who had placed both Ms. Reed's and Ms. Webb's remains in the cooler, inadvertently released the body of Ms. Webb to the Zettler employee.[2] Thereafter, Spangenberg "logged the body [of Ms. Webb] out of the morgue as Ms. Reed," finished his shift, and went home.

{¶ 5} The body of Ms. Webb was then transported to Greenwood Cemetery where, after appellants held a brief closed-casket service, it was buried under the headstone prepared for Ms. Reed.

{¶ 6} Later that afternoon, Justin Weber, also a morgue attendant, was contacted by Kenny Isaacs, another employee, who asked him to check the cooler for the body of Ms. Webb. Weber, after checking the cooler, determined that the cooler contained the remains of four individuals, one of which was Ms. Reed. However, to his surprise, Weber was unable to locate the body of Ms. Webb. Weber, after further investigation, noticed that Ms. Webb's body receipt, which was assigned to Kowalk Funeral Home, had not been signed. After informing Isaacs that Ms. Webb's remains were missing from the cooler, Weber called Spangenberg and asked him to return to the morgue. Weber then called Thomas Zettler, one of Zettler's owners, and informed him that there "may have [been] a mix up of the remains." In response, Thomas told Weber that the body they had received that morning, which they believed to be Ms. Reed, had already been buried in Greenwood Cemetery. After Spangenberg arrived at the morgue, and after confirming that there was, in fact, a "mix up," Weber and Spangenberg informed Isaacs of the mistake.

{¶ 7} Spangenberg, in an effort to rectify his mistake, then called Zettler to confirm that the wrong body had been released. In the meantime, and after discussing the situation with Marilyn Burkhardt, an office administrator with the coroner's office for the past 28 years, Weber was instructed to call Greenwood

---

**2.** As Spangenberg stated in his affidavit, "Since I had been the one who placed Ms. Reed in the cooler following her autopsy, I assumed that I knew which body was that of Ms. Reed," and that "I trusted my memory and did not realize that the bodies may have been shifted."

Cemetery so that the body buried earlier that day could be exhumed and identified.

{¶ 8} At approximately 5:30 that afternoon, Weber and Andy Willis, another employee with the coroner's office, met at Greenwood Cemetery, where they exhumed and identified the buried remains as those of Ms. Webb. The pair then escorted Ms. Webb's body back to the morgue and returned it to the cooler.

{¶ 9} The body of Ms. Reed, which had remained undisturbed throughout this entire ordeal, was buried at Greenwood Cemetery the following day.

{¶ 10} Appellants then filed suit against the coroner's office, various Butler County employees, Zettler, and Greenwood (collectively, "appellees"), claiming tortious interference with a dead body, gross negligence, and fraudulent concealment. Appellees moved for summary judgment, which the trial court granted.

{¶ 11} Appellants now appeal the trial court's decision granting appellees' motion for summary judgment, raising three assignments of error.

## I.  Summary Judgment

{¶ 12} This court reviews a trial court's decision on summary judgment de novo.  *Fields v. Talawanda Bd. of Edn.*, Butler App. No. CA2008–02–035, 2009-Ohio-431, 2009 WL 243102, ¶ 9, citing *White v. DePuy, Inc.* (1998), 129 Ohio App.3d 472, 478, 718 N.E.2d 450.  In applying the de novo standard, we review the trial court's decision independently and without deference to the trial court's determination.  *White* at 479, 718 N.E.2d 450.  A court may grant summary judgment only when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence submitted that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in their favor.  Civ.R. 56(C); *Welco Indus., Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129.

## II.  Butler County Coroner's Office and Various Butler County Employees

{¶ 13} Assignment of error No. 1:

{¶ 14} "The trial court erred in granting Butler County's motion for summary judgment where there were genuine issues of material fact with regard to the statutory immunity provided to the county and its employees."

### Statutory Immunity

{¶ 15} The determination of whether immunity is available is a question of law that is properly decided by the court before trial.  *Frazier v. Clinton Cty. Sheriff's Office*, Clinton App. No. CA2008–04–015, 2008-Ohio-6064, 2008 WL

4964322, ¶ 27, citing *Carpenter v. Scherer–Mountain Ins. Agency* (1999), 135 Ohio App.3d 316, 330, 733 N.E.2d 1196. Accordingly, we review de novo the trial court's summary-judgment decision on immunity grounds. *Frazier.*

## Political Subdivision Immunity: Butler County Coroner's Office

■ {¶ 16} Appellants, in regard to their claims against the coroner's office, argue that the trial court incorrectly concluded that the coroner's office was entitled to statutory immunity pursuant to R.C. 2744.02(A)(1), and therefore, erred by granting summary judgment in its favor. We disagree.

{¶ 17} The Ohio Revised Code establishes a three-tier analysis for determining whether a political subdivision is immune from liability. *Frazier*, 2008-Ohio-6064, 2008 WL 4964322, at ¶ 28, citing *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610. Initially, under the first tier, R.C. 2744.02(A)(1) provides a general grant of immunity to political subdivisions regarding acts or omissions of the political subdivision or its employees in connection with a governmental or proprietary function. Next, under the second tier, R.C. 2744.02(B) lists five exceptions to the general immunity granted to political subdivisions by R.C. 2744.02(A)(1). Finally, under the third tier, immunity may be reinstated if a political subdivision can successfully assert one of the defenses listed in R.C. 2744.03.

{¶ 18} Appellants have not provided this court with any allegation, argument, or evidence indicating that the coroner's office is not a political subdivision as defined by R.C. 2744.01(F). Furthermore, appellants have not presented any evidence to the trial court, or to this court on appeal, that the actions taken by the coroner's office were something other than "governmental functions" as defined under R.C. 2744.01(C) or that any of the exceptions to political subdivision immunity under R.C. 2744.02(B) apply. The trial court, in granting the coroner's office's motion for summary judgment, concluded that "pursuant to R.C. 2744.02(A)(1)[,] the Butler County Coroner's [O]ffice is entitled to immunity." We find no error in the trial court's decision. As a result, we find that the coroner's office is immune from liability under R.C. 2744.02(A)(1), and therefore, the trial court did not err in granting its motion for summary judgment. Accordingly, appellants' first argument is overruled.

## Political Subdivision Employee Immunity

■ {¶ 19} In addition to filing suit against the coroner's office, appellants filed suit individually against the Butler County Coroner, Dr. Richard Burkhardt, as well as various "John Doe" employees of the coroner's office. Although these John Doe employees were not explicitly named in their complaint, appellants, in their appellate brief, claim that the acts or omissions of Marilyn Burkhardt, the

office administrator, as well as Justin Weber and Mark Spangenberg, both morgue employees, created a question of fact for the jury as to whether the coroner's office employees "acted with malice, bad faith, or in a wanton or reckless manner, thus subjecting those employees to tort liability" under R.C. 2744.03(A)(6)(b). This argument lacks merit.

{¶ 20} R.C. 2744.03(A)(6)(b) expressly states that employees of a political subdivision, acting in connection with their governmental or proprietary function, are immune from liability in any civil action for injury, death, or loss to person or property unless the employees' "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶ 21} In this case, appellants do not argue that the various employees were acting in connection with something other than their governmental or proprietary function, or that the Revised Code expressly imposes civil liability upon them. See R.C. 2744.03(A)(6)(a) and (c); see, e.g., *Wallin v. Cincinnati Eye Bank for Sight Restoration, Inc.* (S.D.Ohio 1990), 733 F.Supp. 1152 (coroner is immune from liability for actions taken within the scope of his employment). Therefore, the various employees are immune from liability unless appellants can show that they acted maliciously, in bad faith, or in a wanton or reckless manner. See *Frazier*, 2008-Ohio-6064, 2008 WL 4964322, ¶ 35.

{¶ 22} "Malice" is defined as the willful and intentional design to harm another by inflicting serious injury without excuse or justification. *Brewer v. W. Chester Twp. Planning & Zoning Dept.*, Butler App. No. CA2002–01–026, 2002-Ohio-4483, 2002 WL 2005694, ¶ 20, citing *Garrison v. Bobbitt* (1999), 134 Ohio App.3d 373, 384, 731 N.E.2d 216. "Bad faith" denotes a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive, or ill will, and embraces actual intent to mislead or deceive another. *Brewer* at ¶ 20. "Wanton" misconduct is the failure to exercise any care whatsoever and implies a disposition to perversity and a failure to exercise care toward those to whom care is owed. Id.; *Fabrey v. McDonald Police Dept.* (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31. "Recklessness," distilled to its essence, and in the context of R.C. 2744.03(A)(6)(b), "is a perverse disregard of a known risk. Recklessness, therefore, necessarily requires something more than mere negligence. The actor must be conscious that his conduct will in all probability result in injury." *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, paragraph three of the syllabus. As a result, recklessness "necessarily requires something more than mere negligence," as "mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, ¶ 37, citing *Fabrey* at 356, 639 N.E.2d 31.

{¶ 23} Generally, the issue of malice, bad faith, and wanton or reckless misconduct is a question for the jury. *Johnson v. Baldrick,* Butler App. No. CA2007–01–013, 2008-Ohio-1794, 2008 WL 1704241, ¶ 33, citing *Fabrey* at 356, 639 N.E.2d 31. However, the standard for demonstrating such conduct is high. *Fabrey.*

{¶ 24} Appellants argue that they "provided the trial court with evidence tending to show that the political subdivision employee(s) at a minimum acted wantonly or recklessly" because that evidence "references that a 'mistake' or 'mix-up' occurred." However, contrary to appellants' claim, R.C. 2744.03(A)(6)(b) does not impose civil liability upon political subdivision employees for mere negligent acts, but instead, requires a showing of malice, bad faith, or wanton or reckless misconduct. See *Fabrey,* 70 Ohio St.3d at 356, 639 N.E.2d 31.

{¶ 25} After reviewing the record, we find that the evidence presented does not support appellants' claim that the coroner's office employees "acted wantonly or recklessly." In this case, the evidence presented merely indicates that Spangenberg, a morgue attendant with the coroner's office for the past 22 years, inadvertently, albeit negligently, released the body of Ms. Webb under the assumption that he was, in fact, releasing the remains of Ms. Reed. In addition, although Spangenberg admits that he failed to check the identification of the body prior to its release, a violation of the coroner's office departmental policy, his failure was simply not malicious, or done in bad faith, and does not rise to the level of wanton or reckless misconduct. *O'Toole,* 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 92 ("a violation of various policies does not rise to the level of reckless conduct unless a claimant can establish that the violator acted with a perverse disregard of the risk").

{¶ 26} Accordingly, we find that the evidence presented does not establish, or even imply, that Dr. Burkhardt or any of the coroner's office employees "acted with a perverse disregard of the risk." Id. Instead, the evidence clearly establishes that the release of Ms. Webb's body, in place of Ms. Reed's body, was nothing more than a regrettable and unfortunate mistake. As a result, appellants have failed to demonstrate that a genuine issue of material fact exists regarding whether Dr. Richard Burkardt or any of the coroner's office employees acted maliciously, in bad faith, or in a wanton or reckless manner. Therefore, based on the evidence presented, and because we find that no genuine issue of material fact exists, the trial court did not err in granting the coroner's office employees' motion for summary judgment. Appellants' first assignment of error is overruled.

### III.   Zettler Funeral Homes, Inc.

{¶ 27} Assignment of error No. 2:

{¶ 28} "The trial court erred in granting summary judgment in favor of Zettler where genuine issues of material fact remained in regard to [appellants'] claims for interference with a dead body and gross negligence."

## Tortious Interference with a Dead Body

{¶ 29} Appellants, in regard to their claim of tortious interference with a dead body, argue that the trial court erred in granting Zettler's motion for summary judgment when it found that their claim "does not survive summary judgment because they have not suffered from *serious* emotional distress." (Emphasis sic.) Specifically, appellants assert that based on the evidence presented, "it is clear that [they] did indeed suffer from serious emotional distress as a result of Zettler's actions and the issue should have at least survived summary judgment for a jury determination." We disagree.

{¶ 30} The definition of the tort of "Interference with Dead Bodies" is found in 4 Restatement of the Law 2d, Torts (1979) 274, Section 868, which reads as follows:

{¶ 31} "One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon a body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body."

{¶ 32} In *Carney v. Knollwood Cemetery Assn.* (1986), 33 Ohio App.3d 31, 514 N.E.2d 430, the Eighth District Court of Appeals examined, at length, the basis for a claim of interference with a dead body and concluded that it is a "sub-species of the tort of infliction of serious emotional distress." Id. at paragraph two of the syllabus. Ohio courts, including this court, recognize two infliction-of-emotional distress causes of action, namely, intentional infliction of emotional distress and negligent infliction of emotional distress. See *Audia v. Rossi Bros. Funeral Home, Inc.* (2000), 140 Ohio App.3d 589, 592, 748 N.E.2d 587; see also *Niessel v. Meijer, Inc.* (2001), Warren App. No. CA2001–04–027, 2001 WL 1598325.

{¶ 33} To defeat a motion for summary judgment on a claim for intentional infliction of emotional distress, the plaintiffs must present evidence creating a genuine issue of material fact that they, among other things, "suffered serious mental anguish of a nature that no reasonable person could be expected to endure." *Callaway v. Nu–Cor Automotive Corp.*, 166 Ohio App.3d 56, 2006-Ohio-1343, 849 N.E.2d 62, ¶ 20. Similarly, to defeat a motion for summary judgment for *negligent* infliction of emotional distress, the plaintiffs must present evidence creating a genuine issue of material fact that they "suffered serious emotional distress" as a result of a cognizance, or fear, of peril. *Walker v.*

*Firelands Community Hosp.*, 170 Ohio App.3d 785, 2007-Ohio-871, 869 N.E.2d 66, ¶ 59, citing *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 80, 6 OBR 114, 451 N.E.2d 759.

{¶ 34} A court may decide whether a plaintiff has stated a cause of action for tortious infliction of emotional distress by ruling whether the emotional injury alleged is "serious" as a matter of law. *Powell v. Grant Med. Ctr.* (2002), 148 Ohio App.3d 1, 6, 771 N.E.2d 874, citing *Paugh*, 6 Ohio St.3d at 80, 6 OBR 114, 451 N.E.2d 759. The "seriousness" of the emotional distress is decided on a case-by-case basis. *Powell.*

{¶ 35} In *Paugh*, the Ohio Supreme Court explained the standard of "serious" emotional distress as follows:

{¶ 36} "By the term 'serious,' we of course go beyond trifling mental disturbance, mere upset or hurt feelings. We believe that serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh*, 6 Ohio St.3d at 78, 6 OBR 114, 451 N.E.2d 759.

{¶ 37} In this case, and although they presented some evidence indicating that they were upset and saddened by their mother's death, appellants have not provided any evidence that they were prevented from engaging in productive work or that they sought professional help. See *Day v. Stanley Elec. U.S. Co., Inc.* (Jan. 16, 1996), Madison App. No. CA95–08–029, 1996 WL 12879 (summary judgment proper where appellant submitted no medical testimony or evidence of treatment for serious emotional distress); see also *Hartwig v. Natl. Broadcasting Co.* (N.D.Ohio 1994), 863 F.Supp. 558, 562. Here, the trial court, in construing the evidence in a light most favorably to appellants, found that they "failed to establish that the emotional distress they suffer is both severe and debilitating" and that reasonable minds could not find the alleged mental anguish "is of such a serious nature that no reasonable man could be expected to endure it." We find no error in the trial court's conclusion. As a result, there being no material issues of fact as to whether appellants actually suffered serious emotional distress, the trial court properly granted judgment in favor of Zettler as a matter of law.

{¶ 38} Appellants, nonetheless, contend that they presented sufficient evidence to establish the element of serious emotional distress because at least one Ohio court, as well as a number of legal commentators, recognize the strong likelihood of mental anguish resulting from the mishandling of dead bodies. See *Carney*, 33

Ohio App.3d at 34, 514 N.E.2d 430; see also Prosser & Keeton, Law of Torts (5th Ed. 1984), 362, Section 54.

{¶ 39} In *Carney,* on which appellants heavily rely, the appellate court quoted a passage from Prosser, Law of Torts (4th Ed. 1971), 328–330, regarding cases that have allowed recovery for mental disturbances due to the mishandling of a corpse:

{¶ 40} "What all of these cases appear to have in common is an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious. * * * Where the guarantee can be found, and the mental distress is undoubtedly real and serious, there is no essential reason to deny recovery." *Carney,* 33 Ohio App.3d at 34, 514 N.E.2d 430, fn. 4.

{¶ 41} However, contrary to appellants' claim, the fact that a claim of emotional distress is based upon an alleged mishandling of a corpse does not necessarily "guarantee that the claim is not spurious" because the plaintiffs claiming severe and debilitating emotional distress, such as in this case, must still present some "guarantee of genuineness" in support of their claim to prevent summary judgment in favor of the defendant. *Powell,* 148 Ohio App.3d 1, 9, 771 N.E.2d 874.

{¶ 42} Furthermore, what distinguishes *Carney* from the case at bar is that the particular circumstances in that case, where cemetery workers deliberately and recklessly continued to dig in a grave even after they hit an old wooden vault, and then proceeded to throw the vault and its broken remains into a refuse heap, including the decomposed body of plaintiffs' long-deceased grandmother, were so outrageous and egregious that it could, in fact, serve as a guarantee that the plaintiffs' claim of emotional distress was not spurious. *Powell* at 9, 771 N.E.2d 874. However, other courts confronted with less egregious circumstances, such as the case here, have not come to the same conclusion as the court in *Carney.* Id.; see, e.g., *Audia,* 140 Ohio App.3d 589, 748 N.E.2d 587 (finding funeral home not liable for negligent infliction of emotional distress upon husband and daughter of deceased woman even though they discovered, during calling hours, that the decedent's body had been switched with another deceased woman's body); *Davis v. Billow Co. Falls Chapel* (1991), 81 Ohio App.3d 203, 610 N.E.2d 1024 (determining that funeral home was not liable for emotional injuries suffered by decedent's family on the family learning that decedent's unembalmed body would not be in the casket during calling hours).

{¶ 43} Moreover, appellants have not presented any evidence establishing a "substantial causal relationship" between Zettler's actions and their alleged serious emotional distress because they failed to present any competent evidence indicating that their distress was specifically caused by learning that their

mother's body had, in fact, not been buried as originally believed, but instead, had been inadvertently left, albeit undisturbed, in the morgue cooler. *Powell,* 148 Ohio App.3d at 7, 771 N.E.2d 874, citing *Grote v. J.S. Mayer & Co.* (1990), 59 Ohio App.3d 44, 47–48, 570 N.E.2d 1146. While we recognize that cases involving negligent mishandling of corpses entail real and palpable injury to feelings, and it may even be true that "special circumstances" guarantee the authenticity of the claim, there is no accurate method of separating the natural grief resulting from the death of a loved one from the additional grief suffered as a result of mishandling, or in this case the nonhandling, of the deceased's body. See, e.g., *Gonzalez v. Metro. Dade Cty. Pub. Health Trust* (Fla.1995), 651 So.2d 673 (finding that married couple could not recover from funeral home for tortious interference with a dead body after being notified that their deceased infant had not been buried, but instead, was still in a refrigerated drawer at the hospital morgue).

{¶ 44} In light of the foregoing, we find that appellants were unable to sustain their claim of tortious interference with a dead body, a subcategory of negligent and intentional infliction of emotional distress. Therefore, because the trial court did not err in its decision granting Zettler's motion for summary judgment on this claim, appellants' first argument is overruled.

## Gross Negligence

{¶ 45} Appellants, in regard to their gross-negligence claim, argue that the trial court "incorrectly found that Zettler did not breach a duty." This argument lacks merit.

{¶ 46} Gross negligence is defined as the " 'failure to exercise any or very slight care' " or " 'a failure to exercise even that care which a careless person would use.' " *Posen v. Sitecon, L.L.C.,* Cuyahoga App. No. 86239, 2006-Ohio-3167, 2006 WL 1774131, quoting *Thompson Elect., Inc. v. Bank One, Akron, N.A.* (1988), 37 Ohio St.3d 259, 265, 525 N.E.2d 761. The essential elements for a negligence claim are duty, breach of duty, and damage or injury that is a proximate result of the breach. *Mazzaferri v. Weller Roofing, Inc.* (Nov. 10, 1997), Butler App. No. CA96–10–197, 1997 WL 700066, at *2.

{¶ 47} To defeat a summary-judgment motion in a negligence action, a plaintiff must demonstrate, with all evidence construed most strongly in his or her favor, that the defendant owed the plaintiff a specific duty, that the defendant breached that duty, and that the breach of duty proximately caused the plaintiff to sustain a loss or injury. Id. " 'The existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability.' " *Uhl v. Thomas,* Butler App. No. CA2008–06–131, 2009-Ohio-196, 2009 WL 119844, ¶ 10, quoting *Adelman v. Timman* (1997), 117 Ohio App.3d 544, 549, 690 N.E.2d

1332. The determination of whether a duty exists is a question of law for the court to decide. *Uhl,* citing *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265. In the absence of any duty, appellants' gross-negligence claim must fail as a matter of law. *Elite Designer Homes, Inc. v. Landmark Partners,* Summit App. No. 22975, 2006-Ohio-4079, 2006 WL 2270832, ¶ 57.

{¶ 48} Appellants argue that the trial court erred in granting Zettler summary judgment because, pursuant to R.C. 4717.13(B), "a funeral home has a duty to properly identify a dead human prior to interment." This argument lacks merit.

{¶ 49} R.C. 4717.13(B), states as follows:

{¶ 50} "No funeral director or other person in charge of the final disposition of a dead human body shall fail to do one of the following prior to the interment of the body:

{¶ 51} "(1) Affix to the ankle or wrist of the deceased a tag encased in a durable and long-lasting material that contains the name, date of birth, date of death, and social security number of the deceased;

{¶ 52} "(2) Place in the casket a capsule containing a tag bearing the information described in division (B)(1) of this section; * * *."

{¶ 53} In construing a statute, a court's paramount concern is the legislature's intent. See, e.g., *State ex rel. Cincinnati Enquirer v. Jones–Kelley,* 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, ¶ 17. In order to determine the legislature's intent, the court must look to the statute itself, and "if such intent is clearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged * * *." *State ex rel. McGraw v. Gorman* (1985), 17 Ohio St.3d 147, 149, 17 OBR 350, 478 N.E.2d 770, quoting *Wachendorf v. Shaver* (1948), 149 Ohio St. 231, 36 O.O. 554, 78 N.E.2d 370, paragraph five of the syllabus. In turn, a court must "read words and phrases in context and construe them in accordance with rules of grammar and common usage." *State ex rel. Russell v. Thornton,* 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶ 11; R.C. 1.42. When the language of a statute is plain, unambiguous, and conveys a clear and definite meaning, there is no need to apply rules of statutory construction. *Proctor v. Kardassilaris,* 115 Ohio St.3d 71, 2007-Ohio-4838, 873 N.E.2d 872, ¶ 12.

{¶ 54} Contrary to appellants' claim, the plain meaning of R.C. 4717.13(B) does not impose a duty upon a funeral director, or any other person in charge of the final disposition of a dead human body, to conclusively *identify* the remains of the deceased. Instead, R.C. 4717.13(B) merely requires the placement, on the ankle or wrist, of "a tag encased in a durable and long-lasting material that contains the

name, date of birth, date of death, and social security number of the deceased * * *." As a result, we find that this statute does not require the funeral director to undertake or engage in any procedure, scientific or otherwise, to discover the actual identity of the deceased individual. Furthermore, pursuant to R.C. 313.08(B), the duty to identify the remains of the deceased is specifically relegated to the coroner, and thereafter, if the coroner is unable to identify the identity of the deceased, to "the bureau of criminal identification and investigation." [3] Id.; R.C. 313.08(C). Therefore, because Zettler did not owe appellants any duty to identify the body once it was released from the coroner's office, we find that the trial court did not err in granting summary judgment in its favor.

{¶ 55} Accordingly, appellants' second assignment of error is overruled.

## IV. Greenwood Cemetery Association

{¶ 56} Assignment of error No. 3:

{¶ 57} "The trial court erred in granting summary judgment in favor of Greenwood where there were genuine issues of material fact with regard to Greenwood's duty and serious emotional distress suffered by [appellants]."

## Tortious Interference with Dead Body

{¶ 58} Appellants, in regard to their claim of interference with a dead body, argue that the trial court erred in granting Greenwood's motion for summary judgment when it determined that they had "not presented any proof that they suffered *serious* distress." (Emphasis sic.) However, as noted above, we have already determined that the trial court did not err in finding that appellants failed to establish that they suffered from serious emotional distress. As a result, there being no material issues of fact in regard to appellants' allegations of serious emotional distress, the trial court did not err in granting judgment in favor of Greenwood as a matter of law. Therefore, appellants' first argument is overruled.

## Gross Negligence

{¶ 59} Appellants, in regard to their gross-negligence claim, argue that the trial court erred in granting Greenwood's motion for summary judgment because the cemetery has a "duty to also check and verify that the correct body is being received for burial." However, appellants have failed to bring any authority requiring a cemetery to "check and verify that the correct body is being received for burial," and our research has not revealed any statute or case law

---

**3.** Furthermore, it should be noted that there is no indication that the coroner's office failed to properly identify or label the remains of either Ms. Reed or Ms. Webb.

imposing civil liability for actions similar to those of Greenwood in the case at bar.[4] As the Eighth District Court of Appeals explicitly stated in *Frys v. Cleveland* (1995), 107 Ohio App.3d 281, 286, 668 N.E.2d 929:

{¶ 60} "We do not find from a careful review of the reported Ohio cases a cause of action for wrongful burial. Nor is there a cognizable duty to provide a proper and dignified burial, aside from appropriate contractual obligations which are not at issue here."

{¶ 61} As a result, and in light of the Eighth District Court of Appeals holding in *Frys*, 107 Ohio App.3d 281, 668 N.E.2d 929, we are not inclined to create a new cause of action requiring a cemetery to unseal a closed casket in an effort to determine the actual identity of a deceased individual within. In this state, it is the Ohio Supreme Court or the General Assembly, and not the appellate courts, that creates new causes of action. *Walker*, 170 Ohio App.3d 785, 2007-Ohio-871, 869 N.E.2d 66, ¶ 53, citing *Strausbaugh v. Ohio Dept. of Transp.*, 150 Ohio App.3d 438, 2002-Ohio-6627, 782 N.E.2d 92, ¶ 38. In turn, we conclude that the trial court did not err in granting Greenwood's motion for summary judgment in regard to appellants' gross-negligence claim, and therefore, appellants' second argument is overruled.

## Fraudulent Concealment

{¶ 62} Appellants, in regard to their fraudulent-concealment claim,[5] argue that the trial court erred in granting Greenwood's motion for summary

---

4. {¶ a} It should be noted, however, that R.C. 3705.17 states:

{¶ b} "No person in charge of any premises in which interments or cremations are made shall inter or cremate or otherwise dispose of a body, unless it is accompanied by a burial permit. Each person in charge of a cemetery, crematory, or other place of disposal shall indorse upon a burial permit the date of interment, cremation, or other disposal and shall retain such permits for a period of at least five years. The person in charge shall keep an accurate record of all interments, cremations, or other disposal of dead bodies, made in the premises under the person's charge, stating the name of the deceased person, place of death, date of burial, cremation, or other disposal, and name and address of the funeral director. Such record shall at all times be open to public inspection."

{¶ c} While this statute does require the person in charge of any premises in which interments or cremations are made to "keep an accurate record of all interments * * * stating the name of the deceased person," it does not require that person to determine the true identity of the deceased. As stated previously, the duty to identify the deceased is imposed upon the coroner, or the bureau of criminal identification and investigation, pursuant to R.C. 313.08(B) and (C).

5. We take this time to note that the trial court, in its lengthy opinion, classified appellants' argument as "fraudulent concealment." Although they claimed fraudulent concealment against Greenwood in their complaint, appellants did not argue such a claim in their "Motion in Opposition to [Greenwood Cemetery's] Motion for Summary Judgment" or in their appellate brief, but instead, argued under the negligence per se doctrine. However, a

judgment because, pursuant to R.C. 517.23(D), "Greenwood owed [appellants] a duty to notify them as Ms. Reed's next of kin of any disinterment."

{¶ 63} R.C. 517.23(D) states:

{¶ 64} "The * * * directors of a cemetery association, * * * may disinter or grant permission to disinter and, if appropriate, may reinter or grant permission to reinter any remains buried in the cemetery to correct an interment error in the cemetery if the * * * directors, [or] other officers, * * * comply with the internal rules of the cemetery pertaining to disinterments and if the * * * directors, [or] other officers, * * * provide notice of the disinterment to the *decedent's last known next of kin.*" (Emphasis added.)

{¶ 65} In this case, it is undisputed that appellants are not related, by consanguinity or otherwise, to Ms. Webb, whose remains were, in fact, mistakenly buried and subsequently disinterred. In turn, contrary to appellants' claim, and based on the plain language of the statute, Greenwood was not required to provide them, the children of *Ms. Reed,* notice of the disinterment of *Ms. Webb's* remains. As a result, although common decency arguably calls for such a notification, Greenwood was not statutorily required to notify appellants of *Ms. Webb's* disinterment because they are not her "last known next of kin." See R.C. 517.23(D). Therefore, because appellants are not Ms. Webb's next of kin, the trial court did not err in granting judgment in favor of Greenwood based on appellants' fraudulent-concealment claim.

{¶ 66} Accordingly, appellants' third assignment of error is overruled.

{¶ 67} The judgment is affirmed.

Judgment affirmed.

BRESSLER, P.J., and YOUNG, J., concur.

---

determination of whether appellants argue fraudulent concealment, or merely negligence per se, is irrelevant to this court's holding.