[Cite as *Clements v. Brimfield Twp. Police Dept.*, 2017-Ohio-4238.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| THOMAS CLEMENTS, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2016-P-0079** |
| BRIMFIELD TWP POLICE DEPARTMENT, et al., | : | |
| | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2012 CV 0613.

Judgment: Affirmed.

*Thomas Clements*, pro se, 1410 Brookdale Lane, Kent, OH 44240 (Plaintiff-Appellant).

*Mel L. Lute, Jr.*, Baker, Dublikar, Beck, Wiley & Mathews, 400 South Main Street, North Canton, OH 44720 (For Defendant-Appellees).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Thomas Clements, appeals the trial court's decision granting summary judgment in favor of appellees, the Brimfield Township Police Department, Chief David Oliver, Sergeant Matthew McCarty, and Officers Atha, Dumont, and Pettit, based on sovereign immunity. We affirm.

{¶2} In June of 2010, Cheri Kuss contacted the Brimfield Police Department upon finding her cable box and modem missing from her residence. Officers responded and Kuss informed them that Clements had stolen the items along with her spare house key. She also told the police that Clements did not live there with her. Clements arrived at the residence and told police that he lived there with Kuss and that he had removed the cable box and modem to return them to the cable company. Neither Kuss nor Clements presented a written lease that day demonstrating tenancy. Officer Atha directed Clements to give Kuss the house key and leave the property. Officers also advised Clements he should raise the tenancy issue with the landlord.

{¶3} Clements claims that he and Kuss rented the property together as boyfriend and girlfriend and that Kuss lied to the police to get Clements removed. A few days later, the police were again dispatched to the residence in response to an emergency call by Kuss. Clements had stabbed her in the arm during a domestic altercation. Clements was arrested and ultimately pleaded guilty to felonious assault and burglary. After posting bond but before pleading guilty, Sergeant McCarty reported seeing Clements in his vehicle following Kuss in hers. McCarty reported this to Officer Pettit, who included this in a report he was preparing regarding a no-contact order between Kuss and Clements. As a result of this report, Clements claims to have been charged with stalking.

{¶4} Clements subsequently filed suit against Kuss, the Brimfield Township Police Department, Chief David Oliver, Sergeant Matthew McCarty, and Officers Atha, Dumont, and Pettit (collectively the Brimfield Police). Although less than clear, he

asserted claims against the Brimfield Police for wrongful eviction, conversion, fraudulent misrepresentation, and a civil rights violation.

{¶5}   Following discovery, the Brimfield Police moved for summary judgment as to all of Clements' claims based on sovereign immunity, qualified immunity, and Clements' lack of standing to file suit for wrongful eviction.  Clements filed two briefs in opposition, and the trial court granted the Brimfield Police summary judgment on all claims in August 2013.

{¶6}   The case proceeded to jury trial against Kuss only in 2016, and the jury ruled in Clements' favor, but did not award him any damages.

{¶7}   Clements appeals the decision granting the Brimfield Police summary judgment.  He does not challenge the decision granting the Brimfield Police judgment on his purported civil rights claim.  He asserts six pro se assigned errors:

{¶8}   "[1] The trial court committed prejudicial error in granting summary judgment to defendants-appellees' Sgt. Matthew McCarty and Officer John Pettit, finding that there is no genuine issue of material fact and that Sgt. Matthew McCarty and Officer John Pettit are entitled to judgment as a matter of law when no facts, evidence, or stipulation was submitted in defendants-appellees' summary judgment motion relative to the allegations against them in Counts 6, 7, & 8 of the Second Amended Complaint, of which evidence and stipulation is necessary to be submitted by movant under Ohio Rules of Civil Procedure 56(C) to enable a court to determine if granting summary judgment is appropriate. (Order and Journal Entry, T.d. 139, paragraph 7 and paragraph 8).

3

{¶9} "[2] The trial court committed prejudicial error in granting summary judgment to Officer William Atha and Officer Jerry Dumont, relative to Count 1 in the Second Amended Complaint, by concluding that there was no genuine issue of material fact despite plaintiff-appellant Clements showing there was a genuine issue of material fact by submitting credible evidence demonstrating that the Month-to-Month Rental Agreement evidence submitted by defendant-appellees, which showed Cheri Kuss as the sole lessee of 4396 Edison Road, was actually a falsely dated document that could not have been signed on April 1, 2010 as defendant-appellees purport, but rather was signed by Cheri Kuss on a date after plaintiff-appellant Clements was unlawfully evicted on June 1, 2010. (Order and Journal Entry, T.d. 139, paragraph 7 and paragraph 8).

{¶10} "[3] The trial court committed prejudicial error in granting summary judgment to defendant-appellees Officer William Atha and Officer Jerry Dumont, relative to Counts 1 & 3 in the Second Amended Complaint, and Chief David Oliver, relative to Counts 4 & 5 in the Second Amended Complaint, based upon finding that Clement's burglary conviction stemming from June 7, 2010, '. . . refutes any hearsay effort that Plaintiff made to demonstrate that he had standing to bring this cause of action' (Order and Journal Entry, T.d 139, paragraph 5), when there was credible evidence that a surrender of the premises had occurred subsequent to the unlawful eviction but prior to Clements re-entering the residence on June 7, 2010, which is the only reason a burglary conviction was able to be obtained in the first place.

{¶11} "[4] The trial court committed prejudicial error when granting summary judgment to Officer William Atha, Officer Jerry Dumont, and Chief David Oliver by not adhering to Civ.R. 56(C) whereby the trial court adopted erroneous facts in its Order

4

and Journal Entry, specifically, A) 'On June 1, 2010, police officers of the Brimfield Township Police Department were dispatched to the rented residence of Cheri Kuss.', B) 'In fact, the Plaintiff had a separate address at another location where he resided with his wife, not Ms. Kuss.', contradicting credible evidence supplied by plaintiff-appellant Clements as to those assertions, and the trial court not construing Clement's evidence in light most favorable to the non-moving party as required by Civ.R. 56(C). (Order and Journal Entry, T.d. 139, paragraph 3.)

{¶12} "[5] The trial court erred by concluding that the Brimfield Police Department, Chief David Oliver, Officer William Atha, and Officer Jerry Dumont were entitled to judgment as a matter of law relative to immunity under R.C. 2744.02 although plaintiff-appellant Clements offered credible evidence demonstrating that each defendant acted with malice, bad faith, or with wanton and reckless disregard, contrary to how a reasonable law officer would have acted given the same circumstances respective to each of the counts that each officer is named in.

{¶13} "[6] The trial court erred by concluding that the Sgt. Matthew and Officer John Pettit were entitled to judgment as a matter of law relative to immunity under R.C. 2744.02 and then granting the officers summary judgment although the movants put forth absolutely no facts, evidence, or stipulation in their Memorandum-of-Law regarding the claims against them in Counts 6, 7, & 8 of the Second Amended Complaint nor does their Memorandum-of-Law even mention Officer McCarty or Officer Pettit's names at all."

5

{¶14} We address Clements' assigned errors out of order. His fifth and sixth assigned errors allege summary judgment was improperly granted in favor of the Brimfield Police on sovereign immunity grounds. We disagree.

{¶15} Pursuant to Civ.R. 56(C), summary judgment should be granted when reasonable minds could reach but one conclusion and that conclusion is adverse to the nonmoving party. The moving party has the burden of showing that no issue exists as to any material fact. *State v. Licsak*, 41 Ohio App.2d 165, 324 N.E.2d 589 (1974); *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 626 N.E.2d 798, syllabus (1988).

{¶16} Once the moving party meets his burden, the opposing party may not rely on his allegations in his pleadings, but must set forth facts showing that there is a genuine issue and produce evidence on issues that the party has the burden of proving at trial. Civ.R. 56(E); *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991), citing *Celotex Corp. v. Catrell*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining a motion for summary judgment, the trial court will construe the evidence most strongly in favor of the nonmoving party and grant summary judgment where that party fails to make a showing sufficient to establish the existence of an essential element upon which that party bears the burden of production. *Celotex,* at 322.

{¶17} We review decisions granting summary judgment de novo. *Watson v. Bradley*, 11th Dist. Trumbull No. 2016-T-0031, 2017-Ohio-431, ¶12.

{¶18} Clements' pro se second amended complaint appears to assert two or three state law claims against the Brimfield Police. Clements avers that he was unlawfully evicted and that his property was converted as a result of the Brimfield Police

6

directing him to leave the residence that he allegedly shared with Kuss. He also claims the Brimfield Township Police Department and Sergeant McCarty and Officer Pettit wrongfully secured menacing by stalking charges against him, which he asserts is a fraud or fraudulent misrepresentation claim.

{¶19} R.C. 2744.02(A)(1) provides that a political subdivision is generally immune from civil actions, stating:

{¶20} "Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function * * *."

{¶21} The Brimfield Township Police Department is a political subdivision generally immune from liability in civil actions.

{¶22} Furthermore, R.C. 2744.03(A)(6) provides that employees of a political subdivision are likewise generally immune for duties associated with his or her job:

{¶23} "[T]he employee is immune from liability *unless* one of the following applies:

{¶24} "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

{¶25} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

{¶26} "(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory

7

duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term 'shall' in a provision pertaining to an employee." (Emphasis added.)

{¶27} Thus, employees of political subdivisions are immune from liability unless a designated exception applies. *Cook v. Cincinnati*, 103 Ohio App.3d 80, 90-91, 658 N.E.2d 814. (1st Dist.1995). There is no dispute that the officers named in Clements' suit were acting in the scope of their duties at the time they allegedly committed the torts. Clements instead claims they were acting with either a malicious purpose, in bad faith, or with wanton misconduct. These exceptions to political subdivision employees' immunity have been defined as:

{¶28} "Malicious purpose" is "the willful and intentional design to injure or harm another, generally seriously, through unlawful or unjustified conduct." *Jones v. Norwood*, 1st Dist. Hamilton No. C-120237, 2013-Ohio-350, ¶42. "Bad faith" evinces a "dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another." *Cook, supra.* "Wanton misconduct" is defined as "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, paragraph three of the syllabus. Finally, "reckless conduct" is "a perverse disregard of a known risk[,]" requiring that the "actor must be conscious that his conduct will in all probability result in injury." *Winkle v. Zettler Funeral Homes, Inc.,* 182 Ohio App.3d 195, 2009-Ohio-1724, 912 N.E.2d 151,

8

¶22 (12th Dist.) "These are rigorous standards that will in most circumstances be difficult to establish * * *." *Argabrite v. Neer*, __ Ohio St.3d __, 2016-Ohio-8374, ¶8.

**{¶29}** Whether an employee of a political subdivision is entitled to immunity under R.C. 2744.03(A)(6) is a question of law. *Conley v. Shearer*, 64 Ohio St.3d 284, 292, 1992-Ohio-133, 595 N.E.2d 862. However, "we must determine whether, based on the evidence in the record, reasonable minds could conclude that any of the officers acted 'with malicious purpose, in bad faith, or in a wanton or reckless manner' so as to preclude immunity." *Argabrite,* at ¶15*.*

**{¶30}** First, Clements avers that his then girlfriend Kuss had a longstanding relationship with Officer Atha and Chief Oliver and that as a result of her relationships, the Brimfield Police believed her version of the events and acted partially in her favor upon responding to her call reporting a theft. Clements claims that the Brimfield Police told him to leave the premises and believed Kuss over him even though Clements showed the officers several utility statements in his name establishing his right to remain on the property. Clements claims that Kuss and her sister attended school with Officer Atha and that Kuss previously acted as an informant for Chief Oliver, and as such, their actions in believing her were in bad faith, with a malicious purpose, or in a reckless manner. We disagree.

**{¶31}** Clements' allegations of wrongdoing concern police actions during the course and scope of their official actions in responding to a call reporting a theft. The officers relied on the caller and directed Clements to leave the premises based on Kuss's statement that Clements did not live at the property, that the two had recently

9

broken up, and that she did not want him there. They told Clements that he should address his claimed residency with the property's landlord since it was a civil matter.

{¶32} Clements alleges that Officer Atha and Chief Oliver had past relationships with Kuss that resulted in a show of favoritism to her in responding to her call. This allegation, however, does not demonstrate either acted with a malicious purpose, in bad faith, or in a wanton or reckless manner so as to preclude immunity. Instead, the officers responded reasonably in light of Kuss's assertion that Clements was not a resident of the property and based on their knowledge of the ongoing domestic issues between Kuss and Clements. Thus, summary judgment was warranted in favor of the Brookfield Police on Clements' claims for wrongful eviction and conversion resulting from his alleged wrongful eviction.

{¶33} Next Clements appears to assert a fraud or fraudulent misrepresentation claim regarding officers reporting the fact that Clements was following Kuss. As Clements asserts in his first assigned error, the Brimfield Police did not specifically address the factual merits of this claim in its motion for summary judgment. However, the Brimfield Police clearly sought summary judgment on all of Clements' claims on sovereign immunity grounds, and Clements did not raise any exceptions to R.C. 2744.03(A)(6) to preclude immunity on this claim.

{¶34} Furthermore, the Brimfield Police supported their summary judgment motion with Sergeant McCarty's affidavit in which he verifies that he was aware that Clements had posted bond after being indicted for stabbing Kuss. Therefore, upon seeing Clements following Kuss, McCarty reported this to Officer Pettit because he knew that Clements "had been warned repeatedly to say away from her * * *."

10

{¶35} Its summary judgment motion was also supported by the affidavit of Officer John Pettit, who verifies that McCarty advised him of Clements' proximity to Kuss, and since Pettit had been preparing a police report regarding a no-contact between Clements and Kuss, Pettit included McCarty's observations in his report. Thus, McCarty and Pettit established that they were acting within the course and scope of their official capacities, and as such, are presumed immune from civil liability. Clements does not provide evidence that either was acting with a malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶36} Accordingly, summary judgment was proper in favor of the Brimfield Police on Clements' fraud and fraudulent misrepresentation claims, and his first, fifth, and sixth assigned errors lack merit. Consequently, his remaining arguments in his second, third, and fourth assigned errors are moot since our discussion of these issues would be purely advisory. *State v. Carr*, 5th Dist. Stark No. 2014CA00200, 2015-Ohio-1987, ¶12.

{¶37} The trial court's decision is affirmed.


TIMOTHY P. CANNON, J.,

COLLEEN MARY O'TOOLE, J.

concur.

11