CALLAWAY et al., Appellants,

v.

NU–COR AUTOMOTIVE CORPORATION, Appellee.

[Cite as *Callaway v. Nu–Cor Automotive Corp.,* 166 Ohio App.3d 56, 2006-Ohio-1343.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–1015.

Decided March 23, 2006.

58

The Chapman Law Firm Co., L.P.A., and Justin M. Smith, for appellants.

Morgan & Petrucci, L.L.P., and Mark C. Petrucci, for appellee.

BRYANT, Judge.

{¶ 1} Plaintiff-appellants, Charles Callaway ("plaintiff") and Jean Callaway ("Callaway") (collectively, "plaintiffs"), appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Nu–Cor Automotive Corporation ("Nu–Cor"). Because plaintiff's intentional-tort claim and Callaway's claim for negligent infliction of emotional distress are barred by the statute of limitations, and because Nu–Cor is entitled to judgment as a matter of law on Callaway's claim for intentional infliction of emotional distress, we affirm.

{¶ 2} On March 4, 2002, plaintiff, in the course of his employment and as part of his regular duties with Nu–Cor, was ordered to pour molten aluminum into a sow, a cast-iron mold used to form the aluminum. When the molten aluminum came into contact with the sow, the aluminum exploded, causing plaintiff severe bodily injury. At the time of the accident, Callaway, plaintiff's wife, was in her car waiting to pick up plaintiff from his work shift. Although she did not witness the accident, Nu–Cor employees signaled her to the scene immediately after the accident. When Callaway discovered the identity of the injured worker, she ran to the scene to assist. Callaway suffered severe emotional distress, sleeplessness, and headaches following the incident.

{¶ 3} On July 2, 2002, plaintiffs filed a complaint against Nu–Cor based on the events that occurred on March 4, 2002. Plaintiffs voluntarily dismissed the matter on May 7, 2003, and refiled their complaint on May 5, 2004. The refiled complaint alleges that (1) Nu–Cor committed an intentional tort against plaintiff and (2) Nu–Cor intentionally or negligently caused Callaway emotional distress.

{¶ 4} Nu–Cor responded to plaintiff's intentional-tort claim with two motions for summary judgment. Nu–Cor's first motion contended that plaintiffs could

not prove all the elements of the intentional-tort claim; its second motion claimed plaintiff's intentional-tort claim was barred by the applicable statute of limitations. The trial court granted summary judgment to Nu–Cor, finding that plaintiffs did not establish a prima facie case of an employer intentional tort pursuant to *Blankenship v. Cincinnati Milacron Chem., Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572 ("*Blankenship* intentional tort"). The trial court did not address the statute of limitations, finding the issue moot.

{¶ 5} Nu–Cor filed a third motion for summary judgment directed to Callaway's claims for intentional and negligent infliction of emotional distress. The trial court granted Nu–Cor's motion, concluding that (1) the evidence did not support Callaway's claim for intentional infliction of emotional distress and (2) her claim for negligent infliction of emotional distress was barred by the two-year statute of limitations. Plaintiffs appeal, assigning three errors:

First Assignment of Error:

The Trial Court erred in finding that Plaintiff Charles Callaway failed to uphold their [sic] burden to show that Defendant knew that the process of filling the sow molds would be substantially certain to result in injury to Plaintiff.

Second Assignment of Error:

The Trial Court erred in granting summary judgment on Plaintiff Charles Callaway's claim for intentional tort as genuine issues of material fact exist.

Third Assignment of Error:

The Trial Court erred in finding that Plaintiff [Jean] Callaway has presented no evidence that Defendant intentionally and/or recklessly caused her emotional distress.

{¶ 6} An appellate court's review of summary judgment is de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, citing *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. Accordingly, we apply the same standard as the trial court and conduct an independent review without deference to the trial court's determination. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765; *Brown,* 87 Ohio App.3d at 711, 622 N.E.2d 1153. We affirm the trial court's judgment if any of the grounds the movant raised before the trial court supports the judgment. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41–42, 654 N.E.2d 1327.

{¶ 7} Summary judgment is appropriate only where (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that

conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 8} Plaintiff's first and second assignments of error are interrelated and will be discussed jointly. Together, they contend that the trial court erred in granting summary judgment to Nu–Cor, because a genuine issue of material fact remains about Nu–Cor's knowledge that the process of filling the sow molds was substantially certain to result in injury to plaintiff. Although plaintiff's appeal is grounded in the trial court's decision to grant summary judgment on the merits of his claim, our de novo review of the trial court's decision allows us to examine any ground Nu–Cor raised before the trial court that supports the judgment. See *Coventry Twp.*, supra. Accordingly, we first review the issue raised in Nu–Cor's second motion for summary judgment: whether the applicable statute of limitations bars plaintiff's intentional-tort claim.

{¶ 9} Plaintiff undisputedly was injured on March 4, 2002. Originally, plaintiffs brought suit on July 2, 2002, but voluntarily dismissed their complaint on May 7, 2003; plaintiffs refiled their complaint on May 5, 2004. Nu–Cor contends that at the time plaintiffs refiled their complaint, the two-year statute of limitations for a *Blankenship* intentional tort had expired. Nu–Cor further asserts that Ohio's savings statute, R.C. 2305.19, does not salvage plaintiff's claim because plaintiffs voluntarily dismissed their initial action before the statute of limitations expired.

{¶ 10} Plaintiffs respond that even though they refiled their complaint after the applicable statute of limitations expired, their claims are protected under the savings statute. Plaintiffs acknowledge that the savings statute rescues a party's claim if the claim was originally filed within the applicable statute of limitations, the original claim was dismissed *after* the expiration of the applicable statute of limitations, and the party refiles the claim within one year after the dismissal. Contrary to Nu–Cor's argument, however, plaintiffs argue that the one-year statute of limitations under R.C. 2305.11 controls here because their claim is the intentional tort of battery, not a *Blankenship* intentional tort. Applying the one-year statute of limitations, plaintiffs contend that they voluntarily dismissed their initial complaint after the statute of limitations expired, and they refiled their claim within one year after the dismissal, thereby falling within the protections of the savings statute.

{¶ 11} Resolution of the parties' contentions hinges on determining the applicable statute of limitations, which in turn requires that we ascertain whether plaintiff's intentional tort claim alleges a *Blankenship* intentional tort or a battery.

{¶ 12} Under a *Blankenship* intentional tort, the employee must prove: (1) the employer's knowledge that a dangerous process, procedure, instrumentali-

ty, or condition exists within its business operation; (2) the employer's knowledge that if the employee's employment subjects him or her to such dangerous process, procedure, instrumentality, or condition, harm to the employee will be a substantial certainty; and (3) under such circumstances, and with such knowledge, the employer required the employee to continue to perform the dangerous task. *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 118, 570 N.E.2d 1108.

{¶ 13} By contrast, to establish a battery, the employee must prove that (1) the employer acted with the intention to cause a harmful or offensive contact, and (2) harmful contact resulted. *Hunter v. Shenango Furnace Co.* (1988), 38 Ohio St.3d 235, 237, 527 N.E.2d 871. The employer's overt, positive, or affirmative act must cause the harmful bodily contact; the action does not constitute a battery when the conduct alleged is in the nature of an omission. Id. at 237–238, 527 N.E.2d 871.

{¶ 14} While a *Blankenship* intentional tort may also be a battery, the Ohio Supreme Court stated that unless the circumstances of an action clearly indicate a battery or some other intentional tort delineated in the Revised Code, a cause of action alleging bodily injury as a result of an employer's intentional tort will be governed by the two-year statute of limitations established in R.C. 2305.10. *Funk v. Rent–All Mart, Inc.* (2001), 91 Ohio St.3d 78, 80, 742 N.E.2d 127, citing *Hunter*, syllabus. The crucial consideration in determining the applicable statute of limitations in a given action is the actual nature or subject matter of the cause, rather than the form in which the complaint is styled or pleaded. *Hunter*, 38 Ohio St.3d at 237, 527 N.E.2d 871. A party cannot transform one cause of action into another through clever pleading or an alternate theory of law in order to avail itself of a more satisfactory statute of limitations. *Love v. Port Clinton* (1988), 37 Ohio St.3d 98, 100, 524 N.E.2d 166.

{¶ 15} We thus examine the pleadings to determine the alleged nature and cause of the injury at issue here. Plaintiffs assert that while plaintiff was working as a Nu–Cor employee at the Nu–Cor facility, a supervisory employee instructed plaintiff to prematurely pour molten aluminum into an inadequately heated sow. Plaintiffs allege that Nu–Cor and its supervisory employee knew or had reason to know that the sow was not properly heated at the time plaintiff was ordered to pour the molten aluminum, knew that pouring molten aluminum into an improperly heated sow constituted a dangerous process, and knew that the dangerous process was substantially certain to cause plaintiff injury. Plaintiff was in fact severely burned when the process caused molten aluminum to cover plaintiff's body and eyes.

{¶ 16} Plaintiffs' allegations set forth the requirements needed to prove a *Blankenship* intentional tort. Paragraph by paragraph, plaintiffs described Nu–

Cor's intentional tort in terms that mirror the language of each element set forth in *Fyffe*. Although plaintiffs now attempt to recharacterize the style and nature of their complaint in order to utilize a more satisfactory statute of limitations, plaintiffs' pleadings plainly show that harmful contact with molten aluminum caused plaintiff's injury, and they do not allege that Nu–Cor caused the harmful bodily contact by an overt, positive, or affirmative act.

{¶ 17} In an effort to avoid the consequences of pleading a *Blankenship* intentional tort, plaintiffs point to the language in their complaint that alleges that Nu–Cor "deliberately instructed and required [p]laintiff to pour molten aluminum in the improperly heated sow." Plaintiffs contend that the instruction given after plaintiff repeatedly questioned the safety of proceeding amounted to an overt, intentional act. Several Ohio courts have found similar factual circumstances to be omissions to act rather than overt acts. Specifically, two courts found an employer's act of "allowing" or "permitting" an employee to work under dangerous conditions within the course and scope of the employee's employment, knowing such work was substantially likely to cause the employee's injury, constituted an omission to act, rather than an overt act. *Hunter*, supra; *Hedrick v. Mr. How Warehouse, Inc.* (Dec. 7, 1988), Hamilton App. No. C–870668, 1988 WL 130705. In cases more factually similar to plaintiff's contentions, two courts of appeals found an employer's act of "ordering" or "requiring" an employee to perform a hazardous operation within the course and scope of the employee's employment, knowing such performance was substantially likely to cause employee's injury, was insufficient to demonstrate an overt act. *Cottis v. Red Malcuit, Inc.* (Dec. 13, 1988), Tuscarawas App. No. 88AP070048, 1988 WL 138484; *Dawson v. Astrocosmos Metallurgical, Inc.*, Wayne App. No. 02CA0025, 2002-Ohio-6998, 2002 WL 31828936.

{¶ 18} Here, like *Cottis* and *Dawson*, plaintiffs' allegations that Nu–Cor "acted" to instruct or require plaintiff to perform a dangerous procedure in the course and scope of his regular employment duties do not assert an overt act. Because plaintiffs failed to allege or produce evidence of circumstances that reflect a battery, plaintiffs' "cause of action alleging bodily injury as a result of an intentional tort by [Nu–Cor] will be governed by the two-year statute of limitations established in R.C. 2305.10." *Funk*, 91 Ohio St.3d at 80, 742 N.E.2d 127. Moreover, because plaintiffs dismissed their tort claim before the statute of limitations expired, they cannot invoke the protection of the savings statute in refiling their complaint after the statute of limitations lapsed. Plaintiffs' first and second assignments of error are overruled.

{¶ 19} Plaintiffs' third assignment of error contends that the trial court erred by granting Nu–Cor's summary judgment in Callaway's claim for intentional or negligent infliction of emotional distress. The trial court concluded that although

a four-year statute of limitations governed Callaway's claim for intentional infliction of emotional distress, she failed to submit evidence supporting her claim in response to Nu–Cor's summary judgment motion. The trial court further determined that the two-year statute of limitations set forth in R.C. 2305.10 barred Callaway's claim for negligent infliction of emotional distress.

{¶ 20} To defeat a motion for summary judgment on a claim for intentional infliction of emotional distress, a plaintiff must present evidence creating a genuine issue of material fact that (1) the defendant intended to cause emotional distress or knew or should have known that actions taken would result in severe emotional distress, (2) the defendant's conduct was so extreme and outrageous that it went beyond all bounds of decency and was such as to be considered utterly intolerable in a civilized community, (3) the defendant's actions proximately caused plaintiff's psychic suffering, and (4) the plaintiff suffered serious mental anguish of a nature that no reasonable person could be expected to endure. *Aycox v. Columbus Bd. of Edn.*, Franklin App. No. 03AP–1285, 2005-Ohio-69, 2005 WL 44441, at ¶ 27.

{¶ 21} Here, according to Callaway's deposition, Callaway was sitting in her car, waiting for her husband, when she saw two Nu–Cor employees trying to extinguish a fire on another employee's clothing. After the employees removed the other employee's jacket, they waived Callaway over to the scene of the accident. Callaway then realized the victim was her husband and ran to assist the situation. The trial court concluded that Callaway's evidence failed to demonstrate either that Nu–Cor intended to cause Callaway emotional distress or that Nu–Cor's conduct was beyond all bounds of decency. Plaintiffs respond that they satisfied the "intent" element through evidence showing that Nu–Cor employees admittedly called Callaway to the scene of the accident to witness plaintiff's injury. According to plaintiffs, Nu–Cor knew or should have known that calling Callaway to the scene would result in serious emotional distress, and they contend that a jury should be allowed to determine the factual issue of whether Nu–Cor's conduct was sufficiently extreme and outrageous.

{¶ 22} While Nu–Cor could reasonably foresee that Callaway would suffer emotional distress after witnessing her husband's injury, as a matter of law Nu–Cor's act of summoning Callaway to the scene does not constitute an intentional infliction of emotional distress. Liability attaches to conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 374, 6 OBR 421, 453 N.E.2d 666.

{¶ 23} In contrast to the conduct necessary to support a claim for intentional infliction of emotional distress, Nu–Cor's employees acted reasonably under the circumstances. They did not summon Callaway to the scene to witness the accident or to witness the fire that injured plaintiff; rather, the employees first extinguished the fire and then called Callaway to the scene. Calling a spouse or close relative to the scene after an accident is not unusual, much less outrageous. Indeed, a common reaction to such an injury may have a close relative rushing to an accident scene without an express invitation if they knew a family member or close friend were injured. Because plaintiffs' evidence fails to demonstrate that Nu–Cor's conduct was beyond all bounds of decency, the trial court did not err in finding that the evidence did not support Callaway's claim for intentional infliction of emotional distress.

{¶ 24} To defeat a motion for summary judgment on a claim for negligent infliction of emotional distress, a plaintiff must present evidence creating a genuine issue of material fact that (1) the plaintiff was a bystander, (2) the plaintiff reasonably appreciated the peril which took place, whether or not the victim suffered actual physical harm, and (3) the plaintiff suffered serious emotional distress as a result of this cognizance or fear of peril. *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 80, 6 OBR 114, 451 N.E.2d 759. Negligent infliction of emotional distress is governed by a two-year statute of limitations. R.C. 2305.10; *Lawyers Cooperative Publishing Co. v. Muething* (1992), 65 Ohio St.3d 273, 603 N.E.2d 969.

{¶ 25} Here, Callaway's claim for negligent infliction of emotional distress suffers the same fate as plaintiff's claim for intentional tort. The event causing Callaway's emotional distress occurred on March 4, 2002. Although plaintiffs originally brought suit on July 2, 2002, they voluntarily dismissed the suit on May 7, 2003, before the two-year statute of limitations expired. Plaintiffs did not refile their complaint until May 5, 2004, after the statute of limitations had expired. Accordingly, the savings statute does not apply, and Callaway cannot rely on the savings statute to extend the time for refiling her claim for negligent infliction of emotional distress. The trial court did not err in finding Callaway's claim for negligent infliction of emotional distress to be barred by the statute of limitations.

{¶ 26} Accordingly, plaintiffs' third assignment of error is overruled.

{¶ 27} Having overruled plaintiffs' three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

KLATT, P.J., and FRENCH, J., concur.