[Cite as *Heuker v. Roberts, Kelly & Bucio, L.L.P.*, 2013-Ohio-3987.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SHELBY COUNTY

LINDA HEUKER,

      PLAINTIFF-APPELLANT,             CASE NO.  17-13-09

      v.

ROBERTS, KELLY & BUCIO, LLP,
ET AL.,                         O P I N I O N

      DEFENDANTS-APPELLEES.


Appeal from Shelby County Common Pleas Court
Trial Court No. 12CV000179

Judgment Affirmed

Date of Decision:  September 16, 2013


APPEARANCES:

    *Benjamin D. Eberly*  for Appellant

    *Paul B. Roderer, Jr.*  for Appellees, Roberta S. Roberts, Scott A. Kelly, Roberts, Kelly & Bucio, LLP and ESB Properties

    *David C. Greer*  for Appellee, Christopher R. Bucio

**PRESTON, P.J.**

{¶1} Plaintiff-appellant, Linda Heuker, appeals the Shelby County Court of Common Pleas' judgment granting summary judgment in favor of defendants-appellees, Roberts, Kelly, & Bucio, LLP, Christopher R. Bucio, Roberta S. Roberts, Scott A. Kelly, and ESB Properties (collectively "defendants"), on her claims stemming from Attorney Bucio's legal representation of her during a felony criminal proceeding. Since Heuker's malpractice claims are time-barred, we affirm.

{¶2} On August 18, 2010, Heuker was arrested and charged with cultivation of marijuana in violation of R.C. 2925.04, a second-degree felony, and endangering children in violation of R.C. 2919.22(B)(6), a third-degree felony, following the execution of a search warrant at her home. (Doc. No. 31, Pg. 61); (Heuker Depo. at 24-25, 78). Heuker's children sought an attorney to represent her, but since Heuker did not have any money, they located an attorney who would use land she owned as collateral for the payment of her attorney fees. (Heuker Depo. at 31).

{¶3} On August 30, 2010, Heuker executed a "Formal Fee Agreement FLAT FEE" with Attorney Bucio of the Roberts, Kelley & Bucio law firm. (Doc. No. 31, Pg. 6). On the front page of the fee agreement Bucio handwrote the following notation:

> Client agrees to deed land in Minster, 22.1 acres, to ESB Properties in exchange for full payment of legal services and bail bond payment. The deed of land to ESB Properties for legal services and third party expenses is considered paid when received.

(*Id.*); (Bucio Depo. at 17-19). That same day Heuker executed a document, which provided the following:

> I Linda Heuker on Aug. 30, 2010 terminate the power of Attorney of Thomas Wing regarding the land Deeded to me for 22.2 acres. I hereby request my Deed to the aforementioned property be deeded to ESB Properties for payment of legal services.

(Doc. No. 31, Pg. 12). Heuker also executed that same day a General Warranty Deed transferring ownership of the property to the law firm. (Doc. No. 1, Ex. 1); (Doc. Nos. 31, 39, D's Ex. B); (P's Ex. C).

{¶4} On September 1, 2010, with the assistance of Attorney Bucio, Heuker entered a plea of guilty to one count of child endangering, and the State agreed to dismiss the cultivation of marijuana charge and file no additional charges stemming from the search warrant in exchange for Heuker's guilty plea and her agreement to testify against her boyfriend and codefendant. (Doc. No. 31, Pg. 45-46); (Doc. No. 21, D's Ex. D).

{¶5} On September 29, 2010, the law firm transferred the property to ESB Properties. (Doc. No. 1, Ex. 3).

{¶6} On November 1, 2010, ESB Properties transferred the property to Ted Riethman—who had leased the land from Heuker for several years prior to her criminal case—for $135,000.00. (*Id.*, Exs. 4-5); (P's Ex. C); (Heuker Depo. at 20-21, 98-99).

{¶7} On November 15, 2010, Heuker was sentenced to three years of community control. (Heuker Depo. at 34, 45).

{¶8} In the weeks following her sentencing and during 2011, Heuker repeatedly contacted the law firm seeking a refund of any monies from the sale of the property above and beyond her attorney fees. (Heuker Depo. at 80, 91).

{¶9} In August or September 2011, Heuker told a representative from the Ohio Attorney General's office that she had not received a refund from the law firm following the sale of the property. (*Id.* at 80-83).

{¶10} On October 11, 2011, Heuker filed a grievance against Bucio with Disciplinary Counsel for the Supreme Court of Ohio. (Doc. No. 31, D's Ex. C). This grievance was dismissed on March 6, 2012. (*Id.*, D's Ex. H).

{¶11} On June 5, 2012, Heuker filed a complaint in the Shelby County Court of Common Pleas raising twelve counts, including: Count One of legal malpractice for excessive fees charged and collected; Count Two of legal

malpractice for the failure to return unearned fees; Count Three of legal malpractice for violating Rule 1.8 of the Ohio Rules of Professional Conduct concerning a conflict of interest with regard to Attorney Bucio's transfer of property rights to the law firm; Count Four of unjust enrichment for accepting legal fees far exceeding the value of the services rendered; Count Five of conversion for retaining client funds following the sale of the property; Count Six of fraud for concealing the true value of the property and the attorney fees from Heuker; Count Seven of theft for retaining the funds from the sale of the property; Count Eight of breach of contract concerning the legal fee; Count Nine of breach of fiduciary duty for failing to return funds from the sale of the land in excess of the legal fees per the fee agreement; Count Ten of constructive trust imposed upon the value of the property sold; Count Eleven of civil conspiracy to hide the value of the property from Heuker; and Count Twelve of punitive damages for engaging in a pattern of behavior demonstrating malice, aggravated or egregious fraud, oppression, or insult.  (Doc. No. 1).

{¶12} On July 31, 2012, defendants answered, in pertinent part, that Heuker's multiple claims were all forms of legal malpractice, which were filed beyond R.C. 2305.11(A)'s one-year limitations period.  (Doc. Nos. 11, 13).

{¶13} On January 2, 2013, Bucio filed a motion for summary judgment arguing that Heuker's complaint is barred by R.C. 2305.11(A)'s one-year statute

of limitations. (Doc. No. 25). On January 3, 2013, the law firm, ESB Properties, and Attorneys Kelly and Roberts filed a motion for summary judgment arguing that the law firm, as a matter of law, could not commit malpractice, Attorneys Kelly and Roberts did not have an attorney-client relationship with Heuker, and, regardless, Heuker's claims were time-barred by R.C. 2305.11(A). (Doc. No. 39).

{¶14} On January 22, 2013, Heuker filed a response and memorandum in opposition to the motion for summary judgment filed by the law firm, ESB Properties, and Attorneys Kelly and Roberts. (Doc. No. 42). Heuker also filed a response and memorandum in opposition to the motion for summary judgment filed by Bucio. (Doc. No. 43). On February 6, 2013, the defendants filed reply memoranda. (Doc. Nos. 48, 50).

{¶15} On February 12, 2013, Heuker filed a motion for summary judgment for breach of the fee agreement. (Doc. No. 52). On February 21, 2013, Bucio filed a memorandum in opposition. (Doc. No. 55).

{¶16} On February 27, 2013, the trial court granted Bucio's motion for summary judgment, concluding that Heuker's multiple claims fall under the general category of malpractice claims, and the claims were time-barred by R.C. 2305.11(A)'s one-year limitations period. (Doc. No. 56). The trial court also granted summary judgment in favor of the remaining defendants based upon its judgment in favor of Bucio and dismissed all of Heuker's claims. (Doc. No. 57).

{¶17} On March 18, 2013, Heuker filed a notice of appeal. (Doc. No. 64). She raises two assignments of error. We elect to address Heuker's assignments of error together.

**Assignment of Error No. I**

**The trial court erred as a matter of law, in calculating the one year statute of limitations applicable to claims of legal malpractice.**

**Assignment of Error No. II**

**The trial court erred in applying one year statute of limitations to claims which fall outside of legal malpractice.**

{¶18} In her first assignment of error, Heuker argues that the trial court erred in calculating R.C. 2305.11(A)'s limitations period to her malpractice claims, because Bucio failed to take any affirmative action clearly terminating his representation, thereby triggering the statute of limitations. Heuker further argues that Bucio represented her beyond her November sentencing on other non-criminal matters, thereby extending the time to file her malpractice claims.

{¶19} In her second assignment of error, Heuker argues that her complaint is not limited to malpractice but alleges fraud, which is not governed by R.C. 2305.11(A)'s one-year statute of limitations. Heuker argues that, contrary to his representations and the language of the fee agreement, Bucio retained more than the $30,000 fee he was entitled to for pretrial legal services. She further argues that, at the time she entered into the fee agreement, Bucio represented that her land

was worth $12,400 and, just a few days later, the law firm executed transfer documents indicating that the land was worth $80,000.

{¶20} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

{¶21} The determination of when a legal malpractice cause of action accrues for limitations purposes is a question of law reviewed de novo. *Cicchini v. Streza*, 160 Ohio App.3d 189, 2005-Ohio-1492, ¶ 17 (5th Dist.), citing *Whitaker v. Kear*, 123 Ohio App.3d 413, 420 (4th Dist.1997). Under R.C. 2305.11(A),

> an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.

*Zimmie v. Calfee, Halter and Griswold*, 43 Ohio St.3d 54, 58 (1989), citing *Omni-Food & Fashion, Inc. v. Smith*, 38 Ohio St.3d 385 (1988). A "cognizable event" is "an event which suffices to alert a reasonable person that his attorney has committed an improper act in the course of legal representation." *Whitaker* at 420 (citations omitted); *Hickle v. Malone*, 110 Ohio App.3d 703, 707 (3d Dist.1996).

**{¶22}** Which limitations period applies is determined by the actual nature or subject matter of the cause rather than the form in which the complaint is styled or pled. *Wilkerson v. O'Shea*, 12th Dist. Butler No. CA2009-03-068, 2009-Ohio-6550, ¶ 12. "A party cannot transform one cause of action into another through clever pleading or an alternate theory of law in order to avail itself of a more satisfactory statute of limitations." *Id.,* citing *Love v. Port Clinton*, 37 Ohio St.3d 98, 100 (1988), *Callaway v. Nu-Cor Automotive Corp.*, 166 Ohio App.3d 56, 2006-Ohio-1343, ¶ 14 (10th Dist.), and *Radio Parts Co. v. Invacare Corp.*, 178 Ohio App.3d 198, 2008-Ohio-4777, ¶ 17 (9th Dist.).

**{¶23}** "[M]alpractice consists of 'the professional misconduct of members of the medical profession and attorneys.' Such professional misconduct may consist either of negligence or of breach of the contract of employment[.]" *Muir v. Hadler Real Estate Mgmt. Co.*, 4 Ohio App.3d 89, 90 (10th Dist.1982), quoting *Richardson v. Doe*, 176 Ohio St. 370, 372 (1964). Legal malpractice includes billing errors or overcharging a client for legal services. *Wilkerson* at ¶ 13

(citations omitted); *Triplett v. Benton*, 10th Dist. Franklin No. 03AP-342, 2003-Ohio-5583, ¶ 7 (failure to refund client fees is malpractice governed by R.C. 2305.11(A)'s one-year statute of limitations).

{¶24} The subject matter of this case concerns a dispute over the attorney fees Bucio charged Heuker for representing her during a criminal matter. Bucio testified that the fee agreement provided for a $10,000 flat fee for motion-stage legal services, to be paid in advance, a $30,000 flat fee for pretrial legal services, and a $40,000 flat fee for trial services. (Bucio Depo. at 33); (Doc. No. 31, pg. 6-11). According to Bucio, Heuker indicated that she could not afford these fees, so he agreed to accept 22.2 acres of farmland owned by Heuker in exchange for his representation throughout the criminal proceedings, the cost of Heuker's bail bond, and the costs of selling the farmland. (Bucio Depo. at 31-33); (Doc. No. 31, Pg. 7). Bucio testified that he explained to Heuker that she would not get any refund from the sale of the farmland even if the case ended short of trial. (Bucio Depo. at 86). Heuker, on the other hand, testified that the agreement meant she "was putting [her] land up for like a lien. * * * it would pay for [her] legal fees, and whatever was left [she] would get back." (Heuker Depo. at 42). According to Heuker, Bucio told her he would place a lien on the property knowing that she would have to sell it to pay for his fee, and she would have any remaining funds

from the sale. (*Id.* at 55-56, 58-59). Heuker also testified that Bucio agreed to use a portion of the proceeds from the sale of the farmland to post her bail. (*Id.* at 65).

**{¶25}** Heuker argues that, in addition to her malpractice claim, her complaint raised fraud not governed by R.C. 2305.11(A)'s one-year statute of limitations. We disagree. During her deposition, Heuker admitted that the only reason she filed the complaint was due to Bucio's failure to refund her money from the sale of her land after paying for his legal fees. (*Id.* at 96-97). In her words, "I know I owe them money for representing me. I have no problem paying what I owe but I don't think I owed them $130,000.00." (*Id.* at 48). This case is undoubtedly a fee dispute—a type of malpractice—governed by R.C. 2305.11(A)'s one-year statute of limitations. Heuker cannot transform her malpractice claim into a fraud claim to avoid the applicable statute of limitations. *Wilkerson* at ¶ 12, citing *Love*, 37 Ohio St.3d at 100, *Callaway*, 2006-Ohio-1343, at ¶ 14, and *Radio Parts Co.*, 2008-Ohio-4777, at ¶ 17.

**{¶26}** With respect to Heuker's claims that Bucio fraudulently induced her to enter into the fee agreement knowing the value of the land was more than he represented, the record indicates that, during the negotiations for legal fees, the parties were not certain of the exact value of the farmland. Bucio testified that Heuker indicated that the property was not exactly in her name or had a power of attorney through her ex-husband and had liens on it. (Bucio Depo. at 30). At that

time, Bucio had a tax or auditor's document stating that the value of the farmland was $12,800, but Heuker laughed at that value and said the land was worth "a lot more than that." (*Id.* at 58, 79). Bucio testified that Heuker opined that the farmland was worth around $4,000 per acre, or around $90,000 total. (*Id.* at 79). Bucio testified that he was not sure how much the farmland was worth, but he was confident it was worth more than $12,800, otherwise he would not have made the agreement. (*Id.* at 80-81). He testified that the price of full representation reflected in the fee agreement, $65,000, was taken from Heuker's estimate that the land was worth $4,000 per acre. (*Id.* at 82). Bucio admitted that, based upon all their discussions, he estimated that the value of the land would be anywhere from $65,000 to $80,000. (*Id.* at 83). Bucio testified that his firm took a risk accepting land instead of cash for legal services since there were multiple questions concerning the value of the land, the outstanding liens for which Heuker was unable to give a value, and the power of attorney issue. (*Id.* at 65, 67-69). Bucio admitted that, in the end, the land sold for more than he expected. (*Id.* at 79-80). Heuker testified that she received the farmland as part of her divorce settlement, though she did not have an appraisal of the farmland at that time. (Heuker Depo. at 42-43). Heuker recalled Bucio indicated that the farmland was worth a low value, though she could not recall the exact figure, but she told him that the farmland was worth $100,000. (Heuker Depo. at 89). She recalled having a

discussion about her ex-husband having a power of attorney for her, though she recalled stating that her husband could sell the land for her to pay for the attorney fees. (*Id.* at 55-56, 73).

{¶27} Based upon the record, it is clear that the parties were not certain of the value of the land when they entered into the fee agreement, and Bucio admitted that he estimated the property was worth anywhere from $65,000 to $80,000 based upon their discussions. There is no evidence in the record that Bucio concealed the value of the land from Heuker. This is not fraudulent inducement, and Heuker's attempt to transform this case into something it is not is merely her attempt to evade R.C. 2305.11(A)'s one-year statute of limitations. *Dzambasow v. Abakumov*, the case Heuker cites in support of her fraud claim, does not persuade us otherwise since that case, unlike this case, involved an attorney who represented that he would be litigating the case and then subcontracted the legal work to another attorney. 8th Dist. Cuyahoga No. 86021, 2005-Ohio-6719.

{¶28} Heuker's second assignment of error is, therefore, overruled.

{¶29} Having determined that Heuker's complaint states causes of action for malpractice governed by R.C. 2305.11(A)'s one-year limitations period, the only issue is whether the trial court correctly determined that her claims were

untimely filed. As a preliminary and procedural matter, however, we must dispose of several of Heuker's arguments since she failed to raise them below.

{¶30} In his motion for summary judgment, Bucio argued, in pertinent part, that Heuker's claims should be classified as malpractice claims that were time-barred by R.C. 2305.11(A)'s one-year statute of limitations. (Doc. No. 25). Bucio argued that Heuker filed her complaint more than one year after his representation terminated—on November 15, 2010, the date Heuker was sentenced—and more than one year from February 2011 after Heuker failed to receive her yearly lease payment for the farmland, i.e. the cognizable event triggering the limitations period. (*Id.*).

{¶31} In response, Heuker argued that her claims were not all malpractice claims barred by the statute of limitations, but rather, were also claims of unjust enrichment, fraud, rescission, and breach of contract. (Doc. No. 43). Heuker also argued that R.C. 2305.11(A)'s one-year limitations period never commenced, because Bucio failed to take an affirmative act terminating his representation giving rise to a cognizable event triggering the statute of limitations. (*Id.*). In particular, Heuker argued that Bucio never sent her a letter or billing statement indicating that his representation terminated following the November 15, 2010 sentencing hearing. (*Id.*).

{¶32} On appeal, Heuker argues that R.C. 2305.11(A)'s limitation period was tolled in this case due to the "continuous representation" doctrine. In support of this theory, Heuker points to a letter she received on March 6, 2012 from Carol Costa, Assistant Disciplinary Counsel, dismissing her grievance against Bucio. In pertinent part, the letter states that:

> Ultimately, Mr. Bucio was able to negotiate a plea deal with the state in which you were sentenced to only probation. *A few months later*, you [Heuker] contacted Mr. Bucio again and asked if he could help you [Heuker] in a civil action as you were being sued for diminishing the value of the home you rented during the marijuana growth operation. Given this issue clearly stemmed from the same facts as the criminal matter, Mr. Bucio represented you in this matter without charging an additional fee. *Nearly a year later*, in the summer of 2011, you contacted Mr. Bucio again requesting legal services for an unrelated, serious criminal matter involving your son who was the defendant in a vehicular manslaughter case. You believed that the land transfer should have covered this representation as well, and Mr. Bucio reminded you that the land transfer was for full payment of your criminal and related matters, not for all future matters involving anyone else in your family.

(Doc. No. 31, Defendant's Ex. H) (Emphasis added). During his deposition, Bucio generally agreed with Costa's letter, except that he denied failing to return or ignoring Heuker's phone calls (another portion of the letter not provided above). (Bucio Depo. at 15, 81). Based upon the contents of this letter and Bucio's acknowledgement of their veracity, Heuker argues on appeal that Bucio's representation continued into the summer of 2011; and thus, her June 5, 2012 complaint for malpractice was not time-barred. These arguments, however, were not presented to the trial court, and Heuker is not permitted to raise them for the first time on appeal. *Hood v. Rose*, 153 Ohio App.3d 199, 2003-Ohio-3268, ¶ 10 (4th Dist.).

{¶33} Having disposed of Heuker's procedurally-barred continuous representation argument with respect to Bucio's alleged representation evidenced in Costa's letter, we now must address Heuker's argument that Bucio continued to represent her after the sentencing hearing for the sale of her farmland—an argument she *did* raise below. Heuker testified that she thought Bucio continued to represent her beyond the date of her sentencing hearing, because she did not know if the firm had sold the farmland, and she had not received any refund. (Heuker Depo. at 34-35). Bucio, on the other hand, testified that Heuker informed him that she saw notice of the sale in the newspaper and congratulated him on the sale price. (Bucio Depo. at 70). We must reject Heuker's argument.

**{¶34}** Despite her testimony, the record clearly indicates that Heuker hired Bucio to represent her during the pending criminal proceedings, which particular representation terminated on November 15, 2010 when Heuker was sentenced. (Heuker Depo. at 34, 45). The fee agreement Heuker signed states that Bucio will represent Heuker "in a matter involving 2 counts of child endangering and one count of cultivating charges," and further states that the representation will terminate upon completion of the matter described in the fee agreement. (Doc. No. 31, Pg. 6-11). The language of the agreement Heuker signed clearly indicated that transferring the property to ESB Properties was "full payment of legal services and bail bond payment" and upon receipt of the deed to the property her legal fees and third party expenses would be considered paid. (Doc. No. 31, Pg. 6). Aside from that, Heuker testified that, following her November 2010 sentencing, she sent a letter and constantly called Bucio seeking a meeting to discuss her refund from the sale of the property, but Bucio's secretary would constantly cancel the meetings. (*Id.* at 80). Additionally, Heuker had constructive notice that her farmland was transferred from ESB Properties to Ted C. Riethman when the deed was filed on November 1, 2010. (Doc. No. 34, Plaintiff's Ex. C); *Thames v. Asia's Janitorial Serv., Inc.*, 81 Ohio App.3d 579, 587 (6th Dist.1992) (citations omitted); R.C. 5301.25(A).

{¶35} Besides statutory, constructive notice from the filing of the deed, the record indicates that Heuker had further constructive—if not actual—notice that Reithman purchased the farmland by the end of February 2011 at the latest. Reithman was a personal friend who had farmed Heuker's land for at least the last ten years. (Heuker Depo. at 19-20). Heuker and her ex-husband socialized with Reithman throughout their marriage—in her words, they all talked, played bean bags and barbequed together. (*Id.* at 20). According to Heuker, in November 2010 after the sentencing hearing (and after Reithman had already purchased the property), she informed Reithman that she provided Bucio his name about purchasing the farmland. (*Id.* at 21-22). Despite the fact that Reithman and Heuker were social friends and this conversation occurred with Reithman after the sentencing hearing (and, therefore, after Reithman already purchased the farmland), Heuker testified that Reithman failed to disclose that he purchased the farmland. (*Id.*). Nevertheless, Reithman normally sent Heuker a yearly lease payment for farming the land in February, but she did not receive a lease payment in February 2011, either from Reithman or from the law firm. (*Id.* at 98-99). Notably, in her response to Bucio's motion for summary judgment, Heuker admitted that, as of February 2011, she knew that Reithman was the owner of the farmland, which is why she did not expect a lease payment. (Doc. No. 43).

{¶36} In light of all of these things, the record demonstrates that Bucio's representation terminated on November 15, 2010—the date of the sentencing hearing. Heuker's arguments that Bucio continued to represent her for the sale of the farmland are not supported by the record. Using November 15, 2010 as the termination date for the particular representation herein, Heuker's June 5, 2012 complaint is well outside of R.C. 2305.11(A)'s one-year limitation period.

{¶37} Because R.C. 2305.11(A)'s limitation period commences upon the *later of* the termination of the representation *or* a cognizable event, we must next determine when a cognizable event occurred triggering R.C. 2305.11(A)'s limitations period in this case. In doing so, it is important to note that a "cognizable event" does not require that Heuker had discovered all the relevant facts necessary to file her malpractice claim; rather, "the 'cognizable event' itself puts [Heuker] on notice to investigate the facts and circumstances relevant to her claim in order to pursue her remedies." *Flowers v. Walker*, 63 Ohio St.3d 546, 549 (1992), citing *Allenius v. Thomas*, 42 Ohio St.3d 131, 133-134 (1989).

{¶38} Construing the facts in the record in a light most favorable to Heuker, Heuker had constructive—if not actual—notice by the end of February 2011 that the farmland had been sold. Given that the fee agreement states that Bucio's representation ended after sentencing, in the weeks after sentencing Bucio allegedly cancelled multiple meetings with Heuker regarding the refund, and

Heuker had constructive—if not actual—notice by the end of February 2011 that the farmland had been sold, we conclude that Heuker's failure to receive the February 2011 lease payment was the cognizable event triggering R.C. 2305.11(A)'s one-year statute of limitations. In other words, Heuker's failure to receive the February 2011 lease payment was "an event which suffice[d] to alert [Heuker] that [her] attorney ha[d] committed an improper act in the course of legal representation"—to wit: Bucio's alleged failure to refund any money from the sale of the farmland after deducting his legal fees incurred from his representation during the criminal proceedings, which terminated on November 15, 2010. *Whitaker* at 420; *Hickle*, 110 Ohio App.3d at 707.

{¶39} Heuker's complaint was filed on June 5, 2012 more than one year after this February 2011[1] cognizable event and, consequently, outside of R.C. 2305.11(A)'s limitations period. Therefore, the trial court did not err in granting summary judgment in favor of Bucio, and in favor of the law firm on Heuker's derivative claims, since Heuker's malpractice claims were time-barred.

{¶40} Heuker's first assignment of error is, therefore, overruled.

---

[1] Because the record does not indicate the precise due date of the annual lease payment, we cannot give a precise date in February 2011 triggering the statute of limitations. However, Heuker's June 5, 2012 complaint is filed several months late, even construing the limitations period in Heuker's favor and finding that the limitations period commenced at the end of February 2011 (i.e. March 1, 2011).

{¶41} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS and SHAW, J.J., concur.**

**/jlr**